**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Sam K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1672 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sam K. applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. 416(i), 423, six and a half years ago. (Administrative Record (R. ) 180-86). He claimed that he became disabled as of October 26, 2010 (R. 266), due to a torn right meniscus, two knee surgeries, and a broken jaw and TMJ. (R. 232). Over the next five years, his claim was denied at every level: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) and the case was remanded to the Commissioner. The plaintiff's claim was then denied at the ALJ and appeals council levels again and, again, plaintiff filed suit in federal court. It is the most recent ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. The parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on May 3, 2018. [Dkt. # 5]. The case was then reassigned to me a half of a year later, on January 10, 2019. [Dkt. #23]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

Plaintiff was born on September 24, 1949 (R. 180), and was 61 at the time he alleges he became disabled, and nearly 66 on the date his insured status expired, June 30, 2015. Plaintiff has an excellent work record, working consistently since about 1981. (R. 209). In the last couple of years, he's had a handful of jobs. (R. 260). He's been a truck driver delivering bread, he's tested water and sold treatments, and worked at grocery stores in a variety of positions: unloading and stocking, cashiering, cleaning, and supervising. (R. 261-65). But, along the way, he has had setbacks. He injured his right knee shoveling snow in 2007 and had to have arthroscopic surgery. He got better, but suffered another injury at work in October 2010 when a pallet fell and hit him in the face. He suffered a tear in his jaw, and reinjured his knee as he fell. (R. 33). He's gone through surgeries for both issues and continues to suffer pain from both injuries. And, to make matters worse, he twisted his knee yet again while attempting a return to work in February 2012. (R. 35, 39).

Following an administrative hearing – at which plaintiff represented by counsel, testified along with a vocational expert – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had the following severe impairment: "status post-surgical repair of medial meniscus tear, right knee." (R. 743). The ALJ dismissed plaintiff's sinus tachycardia and high blood pressure as asymptomatic and non-severe. (R. 743). He also found plaintiff's TMJ injury and surgical repair to be non-severe as well. (R. 744). The ALJ determined that plaintiff's knee impairment did not meet or equal a listed impairment – specifically, listing 1.02 for major dysfunction of a weight-bearing joint – assumed to be disabling in the Commissioner's listings. (R. 751).

The ALJ then determined that plaintiff could "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in his ability to sit, stand, or walk throughout an

8-hour workday. The [plaintiff] can never kneel on his right knee, and he can crouch for only brief periods." (R. 751). The ALJ said that he found "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained on this decision." (R. 752). The ALJ said there "must be some objective evidence that reasonably supports the extent of the alleged limitations" and found that the "treatment record did not provide such support." (R. 755). The ALJ went on to note that plaintiff's pain was never so bad that he had to go to an emergency room after work, that treatment had been conservative and non-invasive, and that plaintiff was not ready to have knee replacement surgery. (R. 756).

The ALJ, at one point, seemed to accept the opinion of plaintiff's treating physician that plaintiff could not perform physical labor for more than a four hour shift, but could perform sedentary work on a regular full-time basis. (R. 754). But, in doing so, the ALJ interpreted this as meaning the plaintiff could, every day, do four hours of physical labor *and* four hours of sedentary work. (R. 754). Later on, however, the ALJ said he gave little weight to the treating physician's opinion "that appeared to limit him to working no more than four hours a workday . . . ." (R. 756). The ALJ gave no weight to the opinion of one agency reviewing physician that plaintiff could perform essentially medium work because the medical evidence showed plaintiff was more limited. (R. 757). Similarly, the ALJ rejected the same opinion from the medical expert who testified as the previous hearing. (R. 757). Finally, the ALJ gave "some weight" to the opinion of a second agency reviewing physician, who determined plaintiff could perform essentially light work with few if any postural limitations because the ALJ felt the evidence supported a kneeling restriction. (R. 757). As the ALJ conceded, his opinion was not drawn exactly from any physician's opinion. (R. 757).

3

The ALJ then noted that the vocational expert testified that plaintiff could perform his past relevant work as a water treatment sales representative. (R. 758). The ALJ agreed with the vocational expert and concluded that the plaintiff was not disabled prior to the expiration of his insured status on June 30, 2015, and was not entitled to DIB under the Act. (R. 758).

**II.**

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result,

4

the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). On the other hand, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

**III.**

The ALJ determined that plaintiff is not disabled because he can perform his past relevant work as a water-treatment sales representative. This was based on the vocational expert's testimony that plaintiff's water treatment sales representative position was light work, as generally performed and as described in the Dictionary of Occupational Titles ("DOT"). (R. 772, 811). The job required at least occasional – up to one third of the day – crouching, bending, stooping, kneeling. (R. 773). A person could kneel on just one knee, but they had to be able to get down to ground level somehow on an occasional basis. (R. 773). The job required being on one's feet the bulk of the day. There would be no possibility of alternating between standing and sitting. Sitting would be possible only

5

during breaks. (R. 773). There would only be three breaks each day totaling one hour. (R. 797).

So, a 61- to 65-year-old man, with pain from bone on bone contact in his right knee, was found able to work on his feet most of every day, and crouch or kneel up to a third of every day, sitting only during three breaks each day? "That sounds too strenuous for someone of the plaintiff's physical condition." *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016). Plaintiff's counsel asked a similar question at the hearing, but the ALJ disabused him of the notion that sympathy could trump adherence to the regulations. (R. 777). The ALJ is correct, of course, but common sense does have to enter into the calculus. *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 270 (7th Cir. 2006)("[J]udges . . . , are allowed to use their common sense and background knowledge to draw inferences from what the evidence shows."); *United States v. Jones*, 858 F.3d 221, 228 (4th Cir. 2017)("We do not leave our common sense at the courthouse door."). It's a tough sell, given the evidence, that plaintiff could perform such work on a regular basis. From a logical bridge standpoint, there are problems with the manner in which the ALJ tried to "make the sale."

It would be easy enough to accept that plaintiff could perform sedentary work full time, as his treating physician said he could. But there's an elephant in the room: under the Commissioner's regulations, if the 65-year old plaintiff is able to do sedentary work but no more, he is disabled under the Medical-Vocational Guidelines, unless other work requires "very little, if any, vocational adjustment." 20 CFR Pt. 404, Subpt. P, App. 2, Sec. 201.00(f). That would even be the case with a full capacity for light work. 20 CFR Pt. 404, Subpt. P, App. 2, Sec. 202.00(f). So, unless the plaintiff were found capable of performing his past relevant light work, he would have to be found disabled and entitled to benefits. 20 CFR Pt. 404, Subpt. P, App. 2, Sec. 202.00(c). Maybe that's

6

what the ALJ meant when he said plaintiff "is almost disadvantaged because of the regulations . . . ."). But, it's more like the ALJ was disadvantaged here. Instead of making the obvious, eminently supportable decision, he took a more difficult route.

That's just background, however. A major stumbling block in this case has been, and continues to be, the opinion of plaintiff's treating physician, Dr. Szuch and the work restrictions she imposed on plaintiff back in September of 2011. The doctor said plaintiff:

> can lift no more than 45 pounds on an occasional basis and 35 pounds on a frequent basis. He can carry up to 45 pounds. Kneeling is restricted on the right side only. He can crouch for short periods of time but all of his physical work can only be done for up to a 4-hour shift per day. If he is given sedentary work, that could be performed without restriction in regard to work hours.

(R. 585). The implication seems clear. If plaintiff is assigned a sedentary job, he can do it without restriction on his hours. If he is assigned the heavier work involving lifting, carrying, standing, and walking, he can only do that four hours a day.

But, the ALJ the first time around interpreted this opinion as meaning plaintiff could do four hours of the lifting/carrying/standing/walking work *and then* do sedentary work the rest of the day. (R. 19). When the case went before Magistrate Judge Michael Mason he – quite understandably and reasonably – disagreed with that interpretation. He found that a light work RFC – requiring standing and walking for up to six hours a day – was inconsistent with that four-hour limitation, and rejected the ALJ's notion that his RFC was less limited in some areas that Dr. Szuch's restrictions. (R. 866). The court wanted to know why the ALJ had rejected the more restrictive findings, and he remanded the case, in part, for the ALJ to clarify how he addressed Dr. Szuch's findings. (R. 867).

Yet, on remand, a new ALJ went down the same path. In regard to Dr. Szuch's opinion, the

7

ALJ said:

> I interpret this opinion as indicating that plaintiff could work for more than four hours a day, but the "physical" part of his job when he would have to lift or crouch was to be isolated to a continuous four-hour period or performed for no more than four hours out of the workday. It is also noted that standing, which was always the base for claimant's difficulties at work, was not explicitly addressed in the provided restrictions.

(R. 754). Like Magistrate Judge Mason, we have to say it seems clear that this is not what the doctor had in mind. It makes little sense to speak of a 4-hour "shift" as part of a work day that is then followed by another 4-hour "shift" involving a different kind of work. And even if there were such a thing, there would be no rational way the opinion could be interpreted to say that "4-hour shift" could be somehow scattered throughout the day. So, again, the ALJ's interpretation is wrong.

The parties argue over whether Judge Mason's interpretation is the law of the case, meaning that the ALJ had to adhere to it and not go off on his own. Under the law of the case doctrine, an administrative agency must conform any further proceedings on remand to the principles set forth in the judicial decision, "unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). As such, Judge Mason's ruling on what Dr. Szuch meant foreclosed the ALJ from reinterpreting the doctor's opinion on remand. The Commissioner doesn't really address this point because she mistakenly thinks the plaintiff is arguing that the law of the case dictates that plaintiff is unable to do light work. [Dkt. # 20, at 3]. That's not what the plaintiff [Dkt. # 12, at 14] or the law of the case means. But, in either event, it really doesn't matter because we, again, agree with Judge Mason that Dr. Szuch's opinion means that plaintiff can either do full-time sedentary work or part-time light work – or a bit more – but not a smorgasbord of both.

To make things a bit more confusing, like the first ALJ, the ALJ here seemed to base his RFC

8

finding on the faulty reading of Dr. Szuch's opinion, explaining that his "assessment of the claimant's residual functional capacity is largely consistent this interpretation." (R. 754). But later in the opinion, confusingly, the ALJ then said that the doctor's opinion that "appeared to limit [plaintiff] to working no more than four hours a workday was given little weight." (R. 756). So, is the ALJ RFC "largely consistent" with the opinion or is the ALJ essentially rejecting the doctor's opinion? The question is more difficult to answer because nowhere does Dr. Szuch "limit [plaintiff] to working no more than four hours in a work day." Clearly, on more than one occasion – and as Magistrate Judge Mason explained – the doctor found the plaintiff fully capable of performing sedentary work full time. So, if the ALJ is rejecting the opinion, the basis he supplies for doing so – that Dr. Szuch limited plaintiff to part-time work – is mistaken. And if the ALJ is saying that an ability to perform light work with extra lifting half says is evidence establishing the ability to perform light work full time, he is mistaken again. *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017)("Part-time work is not good evidence of ability to engage in full-time employment, . . . ."). An ALJ's rationale for rejecting a treating physician's opinion has to be supported by the record and logical. *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). The ALJ's rationale here was not and, so, the case must be remanded to the Commissioner.

There are also issues with the ALJ's assessment of the plaintiff's allegations regarding his symptoms and their limiting effects. In evaluating the plaintiff's allegations about his pain and symptoms, the ALJ focused too narrowly on the objective medical evidence. This, too, requires a remand. *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). The ALJ stated that

9

there must be some objective evidence that reasonably supports the extent of a claimant's symptoms. But that's not quite accurate. There must be medical evidence that establishes the existence of a "medically determinable impairment that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2016 WL 1119029, *3. That's step one. The intensity of the symptoms is considered at step two and, while medical evidence is part of the equation, the ALJ may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1119029, *5. But, according to the ALJ's own decision, in which he demands objective evidence to support the *extent* of plaintiff's limitations and symptoms (R. 755), the ALJ here did exactly that.

Obviously, there is a medically determinable impairment, grade four chondromalcia of the right knee as a result of more than one work-related knee injury, that could be expected to produce knee pain. That is clearly beyond dispute. And, it would seem, that this degree of knee impairment could reasonably produce pretty severe pain, and pain from standing and walking. It's not clear what more the ALJ wanted.

The other factors all seem to support the existence of such pain. Plaintiff's daily activities were rather limited. He could prepare simple meals, drive, and go to the grocery store a couple of times a week. During the day, he watched TV or read. The ALJ noted these activities, but never said what he made of them. (R. 752). *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) *(*"But the ALJ did not explain why doing these household chores was inconsistent with [plaintiff's] description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [plaintiff's] daily activities reveal any exaggeration of [plaintiff's]

10

limitations."); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir.2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). He couldn't have thought they were evidence plaintiff could do light work eight hours a day and five days a week. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (concluding that the claimant's "persistence in struggling through household chores despite her pain does not mean, as the ALJ extrapolated, that she can manage the requirements of the work-place" because a person performing chores, unlike an employee, has more flexibility "and is not held to a minimum standard of performance"); *Hill v. Colvin*, 807 F.3d 862, 865, 869 (7th Cir. 2015) (warning against equating the activities of daily living—like babysitting, caring for pets, going to church, visiting with family members, and doing household chores—with those of a full-time job). And he couldn't have thought they were very extensive. *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016)("'[a]n ALJ cannot disregard a claimant's limitations in performing' daily activities."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

The ALJ determined that, when the plaintiff was closely approaching retirement age, he could perform work that required him to be on his feet the bulk of each day and crouch and kneel on one knee up to a third of each day, despite pain due to grade four chondromalcia. As the ALJ conceded, his decision rests on a narrow basis. (R. 753). As such, he needed to build a "logical bridge" from the evidence to his conclusion. Instead, he set out conflicting interpretations of the main medical opinion in this case, both of which conflict with the obvious interpretation and the interpretation set forth in the previous opinion from the federal court. He then confusingly says his residual functional capacity finding is consistent with one faulty interpretation of that medical opinion when it is not.

At the same time, he goes in another direction and confusingly rejects that same medical opinion, again, based on a faulty interpretation. If the court cannot follow the path of an ALJ's reasoning – and it certainly cannot here – the case must be remanded. *Fisher v. Berryhill*, – Fed.App'x –, –, 2019 WL 644219, at *1 (7th Cir. Feb. 15, 2019); *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

## CONCLUSION

For the foregoing reasons, this case is remanded to the Commissioner, and the Commissioner's motion for summary judgment [Dkt. #19] is denied.[2]

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/19/19

---

[2] Two additional points need be made. First, while the plaintiff filed a "Memorandum in Support of His Motion for Summary Judgment", he never actually filed any such motion. And, second, plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As the remand here comes under the Seventh Circuit's "logical bridge" requirement, an award of benefits is not appropriate without further administrative proceedings.